(1)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY JMT D.C.
AUG 28 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Case No.: 26-cv-81082-SMM

DR JIMMY LAFAILLE
**Plaintiff,**

Vs.

UNIVERSITY OF MIAMI, INC., JULIO FRENK (Former President, individually and corporately), THE OFFICE OF THE PROVOST, HUDSON SANTOS (Assistant Dean/Research Assistant Director, individually), VICTORIA BEHAR-ZUSZMAN (Program Head, individually), ROSINA CIANELLI (Professor, individually), KARINA GATTAMORTA (Professor, individually), DR. RENEE CARDENACHE (Neurological Evaluator/Neuropsychology Department Director, individually), THE UNIVERSITY OF MIAMI FACULTY SENATE, THE SCHOOL OF NURSING AND HEALTH STUDIES, THE NEUROPSYCHOLOGY , DR CINDY MONROE (Former Dean of Nursing , individually) DEPARTMENT, THE ETHICS COMMITTEE, and THE DISABILITY SERVICES DEPARTMENT,
**Defendants.**

PRO SE COMPLAINT FOR INSTITUTIONAL CIVIL RIGHTS DISCRIMINATION, BREACH OF CONTRACT, INVASION OF PRIVACY, DATA SABOTAGE, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DEMANDING **$200, 000, 000 (Two hundred million dollars)** IN DAMAGES

The Plaintiff, [DR JIMMY LAFAILLE], appearing Pro Se, sues the Defendants, UNIVERSITY OF MIAMI, INC., DR. JULIO FRENK, THE OFFICE OF THE PROVOST, DR. GUILLERMO PRADO, DR. HUDSON SANTOS, DR. VICTORIA BEHAR-GUZMAN, DR. ROSINA CIANELLI, DR. KARINA GATTAMORTA, DR. RENEE CARDENACHE, THE UNIVERSITY OF MIAMI FACULTY SENATE, THE SCHOOL OF NURSING AND HEALTH STUDIES, THE NEUROPSYCHOLOGY DEPARTMENT, THE ETHICS COMMITTEE, and THE DISABILITY SERVICES DEPARTMENT, and alleges:

(2)

1. **JURISDICTION AND VENUE**: This is a civil action for severe personal injury torts, civil rights violations, Bank Fraud, Cybercrime, Racketeering, and institutional fraud vastly exceeding $50,000, exclusive of interest and costs, falling under the jurisdiction of the Circuit Court of Palm Beach County, Florida. Venue is proper in the West Palm Beach division pursuant to Florida Statute 47.011 because the tortious actions, the systematic destruction of Plaintiff's clinical practice, and the resulting severe physiological and housing injuries occurred entirely within Palm Beach County, Florida. Service of process is directed to the official corporate Registered Agent: Humberto Speziani, UHealth Distribution Center, 1080 SE 5th Street, Suite 100, Hialeah, FL 33010. Phone: (305) 284-2211.
2. **SYSTEMIC CONTINUING TORTS (DECEMBER 2022 THROUGH 2026):** Plaintiff alleges that from December 2022 continuously through 2026, the Defendants executed a unified, coordinated campaign utilizing several administrative sectors of the university to intentionally inflict personal harm, manufacture severe financial ruin, and force Plaintiff and her children into immediate starvation, court-certified indigent status, eviction, and absolute homelessness. This continuous course of conduct began with the bad-faith manipulation of Plaintiff's doctoral enrollment metrics, progressed through the targeted freezing of her contractually guaranteed stipend income, and directly manifested in the active weaponization of the university's un-decommissioned servers to sabotage Plaintiff's secure practice infrastructure in 2026.The Dean of Nursing at the University of Miami Hudson Santos (Former Research Associate) and his affiliates specially Guillermo Prado (Provost/Vice-Provost) et al. committed multiple tortuous acts throughout the years expecting the Plaintiff to crumble and when she did not and they did not want to get exposed partnered with various people including the Defendant/Phone Hackers /Carole Fears and Computer Hacker /Defendant Fabian Wrigth through blatant actions to propel Plaintiff to close down her practice that she built 7 seven years ago and abandon her clients with mental health problems through a Racketeer Influenced and Corrupt Organization (R.I.C.O ) tactic because their actions did not result in the Plaintiff killing herself in January of 2026 as they were Allegedly promised by possibly Carole Fears their main person, Plaintiff phone hacker, and Defendant in the R.I.C.O case leveraged by the Plaintiff against all participants.

3. **The goal of the R.I.C.O members against the Plaintiff was to remove all access to funds by removing anything that can give Plaintiff access to money; dismantle her practice; get her fired or removed from contractors and contracts, like Arden Court and Loyal Source, dissolve her family structure, and create difficult situations by blocking access to help from non-profit organizations like the Free Legal Aid Society and the Rural Free Legal Aid society or at any community services. The coordinated R.I.C.O plan to allegedly eradicate the Plaintiff from the Planet while these Prominent Leaders Hudson Santos, Guillermo Prado work their Main Recruits Carole Fears / Fabian Wright both defendants /hackers process by leveraging their influence in this R.I.C.O campaign because Plaintiff was not supposed to survive past January 2026. Furthermore, Hudson and Prado did not want to be exposed after I remained alive, they amped their attacks to ruin all financial revenues for the Plaintiff to prevent that exposure upon seeing the Plaintiff Thrive and Alive from December 2024 until Present. Their main goal is to ruin the Plaintiff financially, destabilize her family infrastructure leaving her in her state of brokenness so Plaintiff would lose hope in life and commit suicide as they were betting on the false narrative created by Carole Fears that the plaintiff was severely mentally ill and would die under the pressure of losing her marriage, being homeless, and being evicted from her practice. A well-coordinated effort enhanced by involving several actors as they enhanced their tactics including all the Defendants in various lawsuits by the Plaintiff such as SFPV, the RMR group, Matthieu Samendio, Brett Renton, Charles Cartrigth , United Healthcare, Cigna, Aetna, Ambetter, AT&T, Carole Fears , Fabian Writgh , AT&T, Hotwire etc.**
4. 

**ESTABLISHED EXCELLENCE, SCHOLARSHIP INDUCEMENT & RESEARCH EXPLOITATION:** Plaintiff is a highly decorated alumnus of the University of Miami, having successfully graduated from their clinical doctorate (DNP) program with Honors, completed their specialized Psychiatric Mental Health Nurse Practitioner post-Master's program, earned recommendation for a prestigious national leadership program, and achieved induction into the Sigma Theta Tau International Honor Society of Nursing upon graduation in December 2017. Plaintiff was a celebrated scholar on campus, selected as the direct recipient of

both the Aryn Scholarship Award and The Vitas Fellow Scholarship Award in 2017 during her tenure in the DNP program. Based on this established record of academic excellence, Defendants aggressively recruited and enrolled Plaintiff into their PhD program in 2022 under the contractual parameter of providing an institutional stipend and funding her specialized clinical research focusing on mental health barriers within Haitian provider communities. Plaintiff explicitly alleges that Defendants utilized her trusted, long-term professional relationship with Defendant Professor Rosina Cianelli as a fraudulent administrative lure to induce Plaintiff into enrolling. Defendants executed this enrollment in bad faith solely to satisfy a mandatory 5-student minimum threshold required to secure a lucrative federal research grant from the National Institutes of Health (NIH), with the pre-planned corporate intent of dismissing Plaintiff after a single semester once the funding was secured. Plaintiff was selectively exploited as the single, solitary Haitian American doctoral candidate ever admitted into that specific cohort to fulfill diversity metrics for the grant. Once the federal research funding was safely locked into the university's institutional accounts, Defendants completely abandoned their good-faith educational commitments to the Plaintiff, systematically blocking her progression, denying her required processing accommodations, and executing a bad-faith dismissal solely to protect their exclusive administrative grant control.

14. **COORDINATED DEPARTMENTAL REVENUE BLOCKADES & CIVIL RIGHTS VIOLATIONS:** Throughout 2022 and 2023, Defendants subjected Plaintiff to a hostile campus environment that violated her civil rights under Title VI, selectively targeting her despite supporting other non-Haitian candidates. Plaintiff was diagnosed with a processing disorder, an ADHD combined disorder, and mild cognitive issues affecting short-term memory, requiring mandatory testing adjustments. The Disability Services Department failed to address or implement these required accommodations. Assistant Provost Guillermo Prado, operating directly out of The Office of the Provost, actively meddled with and blocked Plaintiff from completing a required neuropsychological evaluation to secure these rights, while staff within the Neuropsychology Department permitted unauthorized access to Plaintiff's medical records. The plaintiff formally reported these severe civil rights violations to the university Ethics Committee, which actively suppressed the grievance. Following an initial bad-faith programmatic separation, Plaintiff succeeded in securing reinstatement to continue her PhD

program. However, during her reinstatement tenure, Defendants continued their hostile campaign through systematic institutional gas lighting. The Plaintiff also met with the Dean of Nursing at the time namely Dr Cindy Munroe who said that "she could not undo the grades submitted by the professors and that Plaintiff could do the PhD program, but it just was not the time "and referred her to speak to the Ethics Committee. Plaintiff was forced into several adversarial meetings with the university **Ethics Committee**, which performed bad-faith reviews and willfully chose to find "no wrong" had occurred to shield institutional grant funding. Concurrently, several members of the **Faculty Senate** actively deflected administrative accountability, gaslighting the Plaintiff by falsely claiming that her active private clinical practice was the sole cause of her academic strain, entirely dismissing the university's absolute lack of supportive framework, programmatic isolation, and hostile behaviors targeted directly at her. Plaintiff submitted formal written petitions to University President Julio Frenk and The Office of the Provost demanding an urgent administrative intervention; President Frenk and the administrative executive leadership completely refused to meet with or respond to the Plaintiff. Instead, on June 7, 2023, the administration issued a formal corporate letter bad-faintly maintaining the discriminatory programmatic dismissal, establishing a pattern of top-down corporate ratification of the ongoing hostile environment.

15. **HANDBOOK APPEALS FRAUD, HOSTILE ENVIRONMENTAL CAMPAIGNS, and ACADEMIC SABOTAGE:** Defendants implemented an intentional administrative blackout to bypass the university's mandatory student handbook parameters and deny Plaintiff due process. Plaintiff alleges that Program Head Victoria Behar-Guzman completely omitted and failed to follow the official handbook appeal process regarding Plaintiff's programmatic status because she was not offered to attend the meeting like it is usually done. The Plaintiff met with Dr Victoria Behar-Guzman on December 20, 2022, in the presence of her mentor Dr Joseph Desantis in Which Dr Victoria recommended that she would follow the handbook and would initiate an appeal through the Nursing Department on January 4, 2023. Defendants entirely failed to process or present Plaintiff's formal academic appeal before the departmental senate during its scheduled session on January 4, 2023. Defendants actively concealed this systemic structural failure for a consecutive

seven-day window, leaving Plaintiff entirely uninformed regarding her standing until January 11, 2023, when Plaintiff proactively inquired and was finally notified via a delayed, bad-faith electronic mail message authored and sent by Assistant Dean Hudson Santos confirming that the administrative sector had finalized the dismissal from the PhD program. This process fraud was compounded by acute psychological torture, a profound breach of professional trust, and the manufacturing of artificial programmatic pretexts. Immediately upon enrollment, Defendant Professor Rosina Cianelli initiated an aggressive, hostile targeting campaign against the Plaintiff. Defendant Cianelli pounced upon initial, minor instances of travel tardiness to humiliate the Plaintiff, completely ignoring the fact that regional traffic parameters had drastically worsened due to the massive, unregulated population migration into Florida following relaxed state COVID-19 pandemic restrictions.

16. Plaintiff explicitly alleges that she successfully accommodated and adapted to these regional infrastructure shifts, consistently arriving to all classes perfectly on time. To further manufacture a hostile environment and hinder Plaintiff's academic access, Defendants intentionally denied Plaintiff an authorized parking space directly in front of the nursing department, a basic campus access right that was routinely granted to all other doctoral cohort colleagues especially the TA assistant (I know because I rode with my friend/PhD classmate who was given the parking spot and was confused about why I was not allowed the same opportunity). In a severe escalation of bad faith, Defendant Cianelli actively turned on the Plaintiff during a profound period of sudden family bereavement. Immediately following the tragic loss of Plaintiff's close first cousin who was like a sister, and subsequently the day after the sudden death of her cousin, Program Head Victoria Behar-Guzman aggressively forced an adversarial administrative disciplinary Zoom meeting in which she called the Plaintiff "the outlier "to inflict maximum emotional duress despite being told about the Plaintiff's cousin's passing. Prior to that meeting, the Plaintiff was passing her class with an A and then she Gave her a B- but promised to let her continue if the other professor namely Rosina Cianelli gave her a b as well because a C constituted an immediate dismissal. Concurrently, Professor Rosina Cianelli scheduled back-to-back target calls, yelling and screaming at the Plaintiff in front of the class throughout the semester of 2022 while allowing favored students to

6

rewrite assignments that they totally got wrong. Eventually, Professor Cianelli issued a discriminatory "C" grade and an arbitrary score of 67 on Plaintiff's papers—explicitly overriding the official campus Writing Center, which had formally reviewed the work and declared it passable making the Plaintiff believed that she followed the Rubric and that her concept was great. Please note that the University of Miami Nursing Department successfully enrolled and graduated several students with prior DNP degrees in its PhD program, never one from a Haitian Origin.

17. The Plaintiff was referred to undergo the neuropsychological exam by her primary care physician Dr Lamour in 2022 but could not find a provider who took her insurance until she called the neuropsychology department at the University of Miami. In January Plaintiff obtained the first available appointment with the University of Miami Neuropsychological Department for March 13, 2023. During the preliminary interview on March 13, 2023, the neuropsychological evaluator from the Neuropsychology Department, Dr. Renee Cardenache, executed an ageist medical declaration, stating that Plaintiff "failed" because PhD candidates should be "in their 20s" and in a woman in her 50's "had no business being in a PhD program, and there was no guarantee he would deduct an assessment would be done" but the Plaintiff obtained an appointment at the end of May which was subsequently manipulated to extend it to August 7, 2023 from a process that started in January of 2023. The Scheduler accidentally revealed that the Plaintiff's father Prado (meaning the Research Professor/Assistant Provost) cancelled the appointment and asked for a later date. The Plaintiff tried to speak to a manager at the neuropsychology department to no avail.

18. Plaintiff maintained the appointment for August 7, 2023, because Plaintiff really needed the exam to be done but eventually did not need it when she found a provider with her insurance who could do it in May of 2023. The Plaintiff could not continue her counselling sessions with the therapist at UM that she trusted and liked because she was dismissed from the program. Plaintiff explicitly alleges that the mild cognitive and retrieval deficits noted during the neuropsychological evaluation that was done eventually by another provider namely Dr Ashkins at her May appointment to undergo the neuropsychological exam including a temporary, stress-induced inability to recall baseline common words such as "pine apple,"

"lantern," and "pens" even while looking directly at the physical objects—stemmed directly from the severe, unmitigated psychological pressure and severe emotional distress intentionally imposed on her by the university's administration team. While Dr. Askins formally recommended an administrative retest window, Plaintiff has been financially and logistically unable to complete the recommended cognitive retest due to the overwhelming, multi-front financial and technical stressors intentionally inflicted upon her household by the Defendants and their legal operatives since her forced departure in May 2023. Plaintiff has since successfully reversed these stress-induced retrieval gaps, utilizing disciplined cognitive exercises, specialized crossword puzzles, and challenging clinical readings to fully sharpen her brain function, while remaining blocked from a formal medical retest due to total copay insolvency and acute housing survival priorities.

19. Defendants falsely promised to support Plaintiff if she completed one subsequent semester without an institutional stipend. Defendants delayed Plaintiff's re-entry until mid-February, forcing her to work under extreme financial deprivation. During this semester, Plaintiff was expected to submit her final research papers under the immediate threat of arbitrary dismissal. Statistics Professor Karina Gattamorta executed a targeted, punitive grading scheme, aggressively lowering Plaintiff's marks for minor technicalities despite Plaintiff possessing an excellent grasp of the concepts, which was verified by professional outside tutoring services (Vyzant). Defendants subsequently forced Plaintiff to withdraw from her core research class on March 29, 2023, isolating her solely within her primary mentor's course—which Plaintiff passed with a flawless "A" grade from a tenured faculty member who was kept completely in the dark regarding the administration's underlying financial plot. Defendants executed a final, bad-faith dismissal from the program in May 2023, cutting off her stipend, forcing her to pay arbitrary fees for a program contractually guaranteed to be free, and permanently blocking her academic progress. Please note that the University was made aware that she would slowly transition her patients and not take new patients until she completed the program during the PhD interview selection and the University still agreed to take the student.

20. **2026 CYBERADDRESS WEAPONIZATION & PHYSIOLOGICAL COLLAPSE:** To completely prevent Plaintiff from

(8)

seeking legal recourse before a statute of limitations expired, Defendants maintained a negligent security vulnerability on their historical academic servers. In July 2026, Defendants permitted an active cyber-hacker to hijack and reactivate Plaintiff's legacy university email address namely JXL 1333@Miami.edu profile to covertly download and install a multi-lingual, fraudulent version of Microsoft Office 365 software onto Plaintiff's remote Surface Go tablet, allowing the hacker to execute remote desktop sabotage that locked Plaintiff out of her active healthcare clearings. This systematic, multi-year institutional squeeze forced Plaintiff to take emergency merchant cash advances (MCAs), directly induced the total collapse of her seven-year practice, caused the dissolution of her marriage, and threw her family into absolute homelessness. This continuous trauma directly inflicted a profound physical breakdown where Plaintiff's body weight plummeted from 150 lbs down to a dangerous, fragile 110 lbs, forcing her family into immediate fear for her life, causing severe dental neglect due to copay insolvency, and triggering an emergency cardiac stabilization event in a Taiwan hospital due to triggered medical PTSD and historical SVT. Plaintiff explicitly alleges that the extreme, unmitigated psychological duress, multi-year targeted harassment, and consecutive family bereavement conditions directly induced a severe endocrine crisis, manifesting in dangerous post-menopausal bleeding that Plaintiff has been financially unable to continue to medically evaluate as recommended due to total copay insolvency caused by Defendants' revenue blockades.

21. **WHEREFORE, Plaintiff, [DR JIMMY LAFAILLE],** respectfully requests this Court enter judgment against Defendants, jointly and severally, for compensatory damages, special medical damages, and heavy punitive damages valued at a baseline of 200, 000, 000 (Two Hundred Million) Dollars alongside any additional financial, equitable, or punitive relief that this Court deems just, proper, and necessary under the law, and demands a trial by jury. Plaintiff respectfully requests that this Court:
22. **A.** Enter judgment for Plaintiff on every claim proven
23. **B.** Award compensatory damages
24. ;**C.** Award consequential economic damages
25. ;**D.** Award lost income and diminished earning capacity where established;
26. **E.** Award legally recoverable personal-injury damages
27. ;**F.** Award medical expenses and future medical damages where established

28. **G.** Award damages resulting from legally established interference with Plaintiff's business and contractual relationships.
29. **H.** Award all relief available concerning Defendant's handling of Plaintiff's security deposit
30. **I.** Award prejudgment interest where authorized
31. **J.** Award taxable costs;
32. **K.** Award attorney's fees only where legally authorized
33. **L.** Grant appropriate equitable relief;
34. **M.** Conduct an expedited hearing concerning Plaintiff's separately filed emergency request regarding the approximately **$5,775 housing emergency**.
35. **N.** Permit appropriate forensic and third-party discovery
36. **O.** Permit amendment to identify Doe Defendants when supported by discover
37. **P** Permit Plaintiff to seek leave to assert punitive damages if the applicable evidentiary threshold is satisfied
38. **Q.** Award damages presently alleged to exceed **200, 000, 000 (Two Hundred Million) Dollars** or such amount as the evidence and jury determine; and
39. **R.** Grant all other relief deemed just and proper.
40. **DEMAND FOR JURY TRIAL** Plaintiff demands trial by jury on all issues triable by jury. Respectfully submitted,

---

**[DR JIMMY LAFAILLE]**
Plaintiff, Pro Se

Address: ___1489 W PALMETTO PARK ROAD S 410 BOCA RATON FL 33486-99991______________________
Telephone: ___561-702-6309____________________
Email: __jimmylafaille@att.net__________________________
Date: ___8/26/2026__________________________

**VERIFICATION**

I, **[DR JIMMY LAFAILLE]**, declare under penalties of perjury that I have read the foregoing Complaint. Statements concerning matters within my personal knowledge are true and correct to the best of my knowledge.

Allegations concerning another person's identity, intent, electronic access, communications, agreement, coordination, financial activity, or participation that I did not personally observe are alleged upon information and belief and remain subject to discovery and proof.

I understand that an IP address, software installation, electronic account, Remote Desktop configuration, or other technical artifact does not, standing alone, establish the identity or intent of a particular person.

**[DR JIMMY LAFAILLE]**

Date: ____8/28/2026_________________________

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon the appropriate parties by a method authorized under applicable Florida law and rules on this __28__ day of _______08_____, 2026.

Respectfully submitted,

[DR JIMMY LAFAILLE

[jimmylafaille@att.net]